GeeeN, Judge,
delivered the opinion of the court:
On November 10, 1936, the plaintiff entered into a contract with the defendant under the terms of which it agreed to furnish all labor and material and perform all work required for reinforcing the south pier of Summit Bridge over the Inland Waterway from the Delaware River to Chesapeake Bay, Delaware and Maryland, for the consideration of $41,783. Plaintiff’s work under the contract was to be completed within 100 days from the date of receipt of written notice to proceed.
Article 19 of the contract provided in part as follows:
Art. 19.. (a) Labor preferences. — With respect to all persons employed on projects, except as otherwise pro *12 vided in Regulation No. 2 (a), they shall be referred for assignment to such work by the United States Employment Service and (b) preference hi employment shall be given to persons from the public relief rolls and, except with the specific authorization of the Works Progress Administration, at least ninety percent (90%) of the persons employed on any project, shall have been taken from the public relief rolls: Provided, however, That, expressly subject to the requirement of subdivision (b), the supervisory, administrative,. and highly skilled workers on the project, as defined in the specifications, need not be so referred by the United States Employment Service.
Pursuant to notice received from the defendant, the plaintiff, on December 17, 1936, placed its equipment on the site of the work preparatory to beginning work. On December 16, 1936, the plaintiff made a request on the United States Employment Service for workmen and as the work proceeded continued to request workmen from the United States Employment Service, which was the office designated from which plaintiff was to receive its labor supply. But the United States Employment Service was not able to furnish sufficient qualified men to carry on the work and the necessary workmen could not be obtained in accordance with the terms of the contract. Part of this was caused by the dangerous nature of the work and part by other causes. The plaintiff attempted to get permission to use his own men on the work but did not succeed and in order to complete the contract was compelled to hire more than 10 percent of his labor from a source other than the United States Employment Service.
The contracting officer found that by reason of the failure of the United States Employment Service to furnish the necessary labor to complete the contract plaintiff was delayed 23 days in completing the work, and having so found, extended the time of plaintiff for completion of the contract accordingly. The plaintiff now seeks to recover damages on account of the delay. The defendant concedes the delay and also the amount of damage sustained which was found by the contracting officer, but says there has been no breach of the contract on its part, that it did not agree to furnish a sufficient supply of labor, and that there is nothing in the *13 ■contract providing that the contractor might recover damages in case of delay being caused by failure to furnish workers.
There is in fact no provision in the contract that defendant should furnish a sufficient supply of labor, and nothing is said therein with reference to the plaintiff being entitled to recover damages in case such a supply was not furnished. The nature of the contract, however, was such that we think it carried an implied agreement to furnish the men necessary to carry on the work. It must have been understood between plaintiff and the defendant’s agents who prepared and executed the contract that plaintiff would be permitted in some way to obtain a sufficient force to carry on the work contemplated thereby. The provisions contained in the contract with reference to the source from which the plaintiff should obtain its workers surely were not understood by the parties to mean that if the workmen could not be so obtained the plaintiff would not be permitted to obtain the necessary workmen to complete the contract. Under any other construction, we would have in one part of the contract a provision that plaintiff must complete it within a certain time, and in another part a provision which meant that it could not be completed in event there was a shortage of workmen.
In Black v. Woodrow, 39 Md. 194, 215, it is said:
It not infrequently occurs that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. Thus, if the act to be done by the party.binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will be necessarily implied.
This case is cited as authority for the principle laid down therein in 13 C. J., sec. 122, p. 649. We think the rule stated is a correct one and conclude that the contract in the case at bar carried an implied provision that the defendant would *14 furnish the necessary workmen to complete the work within the required time. It follows that by its failure so to do the defendant breached the contract and was liable in damages.
It is urged on the part of the defendant that the contract provided in substance that, except with the specific authorization of the Works Progress Administration, at least 90 percent of the persons employed should be taken from the public relief rolls. The plaintiff did not comply with this provision nor did it request the Works Progress' Administrator to waive it. The evidence shows definitely that the plaintiff used every effort to obtain men from the source required by the contract and obtained all the workmen it possibly could in that manner. Apparently the officials of the Employment Service did what they could to aid in the matter, but they were unable to furnish the necessary workmen. The fact was that the men necessary to carry on the work could not be obtained in the manner required by the contract and plaintiff was compelled to go outside of its literal provisions in order to complete the work which it required.
It is urged on behalf of defendant that the contract provided in effect that the Works Progress Administration might waive this provision as to the source from which labor should be obtained but that plaintiff did not communicate with the Works Progress Administrator and ask that such a waiver be made. It is sufficient answer to the defense so set up, as we think, that such action would have been absolutely useless. The provision with reference to permission being given by the Works Progress Administration is quite peculiar and we think amounts to little or nothing because there was nothing that required the Works. Progress Administration to give such permission or consent even though no laborers whatever could be obtained in the manner required by the contract. Moreover, the plaintiff violated no provision of the contract by not requesting specific authority from the Works Progress Administration, for the contract did not require it to so act. But if the plaintiff had requested such authority, it would have made, no difference in the situation whether the Works Progress. *15 Administration granted the request or not — the men were not available in any event and this action would not have changed the situation in the least. The parties to the contract knew this, the officials of the Employment Service knew it, and we must presume it was known also by the Works Progress Administration which, however, was not a party to the contract. Plaintiff’s actions and conduct in. the premises were entirely reasonable. It did everything it could to advance the progress of the work to early completion. It kept the contracting officer and the Employment-Service fully advised of the situation and the plaintiff and the contracting officer conferred with the Employment Service with reference to its failure and apparent inability to secure and furnish the required workers under Art. 19 of the specifications, as shown in Finding 5. The plaintiff proposed to the Employment Service that, by reason of the fact a sufficient number of men had not been furnished, plaintiff secure and use its own men on the project, but the officials of the Employment Service declined to consider the proposition and told plaintiff to proceed with the men it had. After plaintiff had waited a reasonable time, carrying on the work in the meantime with the greatest possible dispatch, it employed other laborers in the completion of the work.
We think also that Art. 19 of the specifications with reference to a waiver of that provision by the Works Progress Administration had no reference to a case where the Employment Service did not or could not, within a reasonable time, furnish a sufficient number of laborers, but that provision, under the expressed and clearly intended provisions of the article, applied only in case the Employment Service could furnish and offered to furnish at least 90 percent of the persons employed on the project from public relief rolls. Plaintiff employed and used such persons as the Employment Service supplied and, in these circumstances, there was nothing for the Works Progress Administration to waive, and plaintiff was not required under the article to make any application to the Works Progress Administration.
The basis of plaintiff’s action is the implied contract of defendant to furnish the workmen needed for the comple *16 tion of tbe contract. Even if the contract implied that plaintiff should ask authority from the Works Progress Administration to employ workmen outside of the provisions thereof, we still think plaintiff’s failure so to do is no answer to the claim which it makes that the contract was breached, because the making of such a request would have availed nothing, and we conclude there was a breach of the contract on the part of the defendant.
There is no dispute over the fact that the plaintiff was delayed 23 days by the failure to obtain the necessary workmen, nor is there any conflict as to the amount of its damages therefor which was practically agreed upon between plaintiff and the contracting officer. Plaintiff, however, asks damages for 5 days’ additional delay caused by a truck drivers’ strike and as a reason for this claim asserts that but for the delay caused by defendant failing to furnish the necessary workmen it would have finished the job before the strike took place. Conceding this to be the fact, we do not think it entitles the plaintiff to recover for this 5 days’ delay. The defendant was not in any way responsible for the strike of the truck drivers. They were the direct cause of this 5 days’ delay. This delay was not one which the defendant had any reason to anticipate and only indirectly was it connected therewith. We think that the plaintiff should be denied recovery on this item.
As a further defense the defendant sets up that the plaintiff executed a voucher for the final payment in accordance with the terms of the contract and is thereby barred from making any further claims against defendant. Some early ■decisions of this court are cited in support of this contention. ■On the other hand, counsel for plaintiff say that the cited cases do not support such a rule except where a release is .signed which states in substance that nothing further is ■owing to the contractor,, and that in the case at bar the plaintiff executed merely a receipt for payment in accordance with the contract. Eecent decisions of this court are also cited as being contrary to the rule which defendant seeks to have applied. The evidence shows that when the extension of time for completing the contract was granted *17 tbe plaintiff notified tbe contracting officer, through his assistant who was acting in the matter, that it would ask additional compensation on account of the delay. This notification was before the final voucher was signed and when the payment was made we think it was well understood between plaintiff and defendant that plaintiff would claim damages for the delay. We are clear that under the circumstances of the case plaintiff was not barred from recovering damages for the delay on account of the signing of the voucher.
The evidence shows that the plaintiff was damaged by the delay to the extent of $4,918.69 which it is entitled to recover. Judgment is rendered accordingly.
Williams, Judge; LittletoN, Judge; and Whaley, Ohief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.