Whitaker, Judge,
delivered the opinion of the court:
Plaintiffs entered into a contract with the defendant for the construction of a Post Office and Court House at Wilmington, Delaware. They sue the defendant for damages for delays caused by (1) failure to furnish models on time; (2) changes made in penthouses and a coping; (3) changes *474 made in the Judge’s library; (4) on account of a strike; (5) changes necessary to install an electrical signal system; (6) changes in the counters in the deputy clerk’s and deputy marshal’s offices; and (7) changes to provide for an acoustical tile base in certain of the rooms.
1. Delay due to failure to furnish models on time. — The plans and specifications called for the erection of eleven limestone ornamental carvings at various points on the exterior of the building. The models for these carvings were prepared by an independent contractor. After the architects for the building had prepared details for the models, the independent contractor moulded them in clay and photographed them. After the photographs had been approved by the architects and the Treasury Department the models were then cast in plaster and were photographed and, after approval, were shipped to plaintiffs’ subcontractor in Indiana, who constructed the ornamental carvings according to them.
According to plaintiffs’ progress schedule, 2 of these 11 models were required to be in the hands of their subcontractor on December 10, 1935, and 4 on December 15, 1935, but these 6 models were not received by the subcontractor until February 28, 1936. Plaintiffs originally claimed damages for this 80 days of delay; however, in their brief they reduce this claim to 44 days. The contracting officer found that plaintiffs had been delayed 32 days and extended the time for completion of the contract accordingly. The defendant in its brief admits that there was some delay, but says that the proof does not show the extent of it. It suggests that the delay could not have been more than 19 days.
The commissioner finds that defendant was not responsible for the entire 80 days’ delay. He finds that plaintiffs were considerably delayed in the first few months of the contract by tardy delivery of structural steel, brick, tile, waterproofing, granite, and on account of unsatisfactory metal forms, and by unusually severe weather. The result of this was that by the end of December, when the 6 models should have been in the hands of the subcontractor, only 18.4 percent of the work had been completed, whereas 35 percent should have been completed.
*475 He also finds that plaintiffs did not begin the setting of limestone until March 24, 1986, whereas, according to their schedule, all of it should have been set between December 23 and March 15; and he finds that they were not ready for the carvings until April 30, 1936. These findings are not disputed and are amply supported by the testimony.
Inasmuch as plaintiffs were not ready for the 6 carvings, the models for which were furnished on February 28, 1936, until April 30, 1936, it would appear that plaintiffs had not been delayed at all due to the tardy furnishing of these 6 models, since plaintiffs had notified the defendant that only 2 months would be required to construct the carvings after the models had been received. However, the commissioner does find that some ornamental carvings were not on hand when plaintiffs were ready for them, and he finds that the defendant was responsible for this delay, whatever the extent of it may have been. He also finds that it took plaintiffs 146 days to do the limestone work, whereas their progress schedule had allowed 83 days therefor.
For how much of this 63 days’ delay the defendant was responsible is exceedingly difficult to determine from the proof. As stated above, the defendant says that this could not have exceeded 19 days, but the contracting officer found that the delay had been 32 days.
It is true that we are not bound by the findings of the contracting officer in a claim for damages due to delay (Langevin v. United States, 100 C. Cls. 15), but there is a strong presumption that the delay was not less than that found. The contracting officer, or his representative, had day to day contact with the work and was in the best position of anyone, except the contractor, to know the extent of the delay. He is supposed to weigh the facts with an even hand before rendering his decision; but it cannot be overlooked that he is the defendant’s selection and its own employee. He is not apt to err on the side of the contractor and against his employer, whose interests he is employed to guard and protect. Unless the clear weight of the evidence shows the delay was less than that found by him, we think the defendant is bound by his finding. His finding in this case is not contrary to the weight of the evidence.
*476 On tbe other hand, the plaintiffs evidently were satisfied with the finding because they took no appeal from it to the head of the department.
We hold, therefore, that plaintiffs are entitled to recover from the defendant damages for 32 days’ delay in the furnishing of the models.
2. Belay due to •penthouses and coping changes. — The contract called for two penthouses on top of the third story for housing the elevator machinery. These were to be faced with brick; but in November 1935 defendant notified plaintiffs that it desired to change this facing to limestone with a brick backing, and requested a proposal for doing the work as changed. This proposal was submitted on November 22,1935, in the sum of $1,534.50. Plaintiffs were notified that it was considered excessive and subsequently they submitted several revised proposals, including one on April 3,1936, for $2,567, which included 10 percent overhead and 10 percent profit, and an amount of $600 for “additional job administrative expense due to delays.” They were notified that the contracting officer was without authority to approve any charge for overhead other than overhead incident to the extra work ordered. On April 8,1936, the plaintiffs were ordered to proceed with the changes, subject to a later determination of the price. Drawings for the changes had been transmitted to plaintiffs previously on March 28, 1936. Finally on April 13, 1936, plaintiffs submitted a proposal of $1,529.58, which was accepted.
Plaintiffs claim that the defendant’s delay in making up its mind as to the change it wanted was unreasonable and that they were delayed thereby for 30 days to their consequent damage. The contracting officer extended plaintiffs’ contract time 24 days on account of the delay.
It is questionable whether or not the plaintiffs were delayed at all on account of this change. The commissioner-finds that the plaintiffs could have begun work on the penthouses on April 12, 1936, but the evidence shows that even though they had had the stone on hand at that time they probably would not have done so. As we stated in discussing- *477 the delays due to the furnishing of the models, plaintiffs did not begin their limestone work until March 24, 1936. This work, of course, begins at the bottom of the building and works up. It is not reasonable to suppose that plaintiffs would have done the limestone work on the penthouses on the top of the building prior to the time they had done the stone work below this point. As a matter of fact, plaintiffs did not begin the stone work on the penthouses until July 2, 1936, three months after the drawings had been received.
But whether or not the plaintiffs were in fact delayed by this change in plan, as the contracting officer has found, we are satisfied that under all the circumstances the delay in deciding upon the change was not unreasonable. Unless it was unreasonable, the plaintiffs are not entitled to recover. Magoba Construction Co. v. United States, 99 C. Cls. 662, 690; Silberblatt & Lasker, Inc. v. United States, No. 45302, decided February 7, 1944 (Ante, page 54).
The defendant knew that plaintiffs were behind their schedule and would not be ready to begin the limestone work when they had originally contemplated doing so. It knew that they did not begin this work, in fact, until March 24, and it knew that this work began at the bottom of the building and worked upwards. Plaintiffs’ progress schedule showed that they contemplated taking 83 days to do the limestone work. Having begun the limestone work on March 24, according to their schedule they would not have completed it until June 15. Therefore, they would not have been ready for the limestone for the penthouses until about the first of June. The plans were transmitted to plaintiffs two months earlier, giving ample time for its fabrication and delivery to the job by the time plaintiffs in ordinary course would have been ready for it. As a matter of fact, the setting of the limestone on the penthouses did not begin, as stated, until July 2, 1936, three months after the plans had been received.
Defendant, therefore, had a right to assume that its delay in deciding on this change would work no hardship on plaintiffs. Under these circumstances, we think that defendant’s *478 delay in submitting plans for this change was not unreasonable and, hence, plaintiffs are not entitled to recover on this item.
3. Judge’s librcvry change. — On September 12, 1936, defendant requested plaintiffs to submit a proposal for making certain changes in the Judge’s library. This involved cutting off a portion of the library in order to make a hallway, and the addition of two doors, and the relocation of another one, and certain additional electrical wiring and radio outlets. On September 14, 1936, plaintiffs submitted a proposal of $687.76 to do the work. On September 25 the defendant ordered plaintiffs to proceed with the work, subject to a later determination of the price, but not to exceed the amount of their proposal. Later the proposal was reduced to $653.76, and was approved. This was a minor change; it was performed in 6 days. It could not have seriously delayed the final completion of the work. Work had to stop in this particular part of the building, but the commissioner’s report shows that other construction work under the contract proceeded regularly with the normal quota of employees. This being the known situation, there was no great rush in ordering the exact change desired.
When it is considered that the change had to be approved by the private architects, and approved by the supervising architect, and, since it involved more than $500, by the head of the department, and since it was a minor change which could not have seriously interfered with the progress of the whole work, we think that 11 days was not an unreasonable time to take to issue the actual order to proceed. Although this order was issued on September 25, plaintiffs did not begin work on the change until a month later, on October 28.
Plaintiffs are not entitled to recover on this item.
4. Strike delay. — Plaintiffs’ subcontractor did not receive the last models for the carvings until April 27,1936. Before the carvings could be fabricated a strike occurred at the subcontractor’s plant, which delayed all limestone work from May 19 until June 9, a period of 20 days. The plaintiffs requested, and the contracting officer granted, an extension of *479 time of 20 days on account thereof. In plaintiffs’ petition they seek damages for this 20 days of delay. The commissioner in computing the total delay for which plaintiffs are entitled to recover omits this 20 days. We think this was proper. Young-Fehlhaber Pile Co. v. United States, 90 C. Cls. 4, 16.
Plaintiffs are not entitled to recover on this item.
5. Electrical signal system, change. — On October 19, 1936, defendant requested plaintiffs to submit a proposal for the installation of an electrical signal system consisting of 8 buzzers, push buttons, certain annunciators, and a light. Twenty-two days later plaintiffs submitted a proposal of $519.92 for doing the work, which was later accepted by the defendant. Ten days after the proposal was received plaintiffs were directed to proceed with the work at a price to be determined later.
Later on plaintiffs claimed an extension of time of 10 days for the performance of the contract on account of this change, but this claim was not acted upon by the contracting officer, and plaintiffs did not pursue the matter further.
We are of opinion that the 10 days which the defendant took to check plaintiffs’ proposal was not an unreasonable time under all the circumstances, for the reasons stated in the discussion of the Judge’s library change.
Nor are we satisfied that the plaintiffs in fact were delayed by this change. The commissioner has found that they were not delayed, and the plaintiffs in their exception to the finding point to no proof indicating that it is erroneous. Rule 46 of this court reads in part: “Each exception, at the end thereof, shall have appropriate references to the parts of the record relied upon for its support.”
Plaintiffs are not entitled to recover on this item.
6. Changes in counters and acoustical tile bases. — The commissioner finds that the plaintiffs were not delayed by either one of these changes, and plaintiffs took no exception thereto. Indeed they say in their brief they do not press these claims.
Plaintiffs are not entitled to recover on them.
*480 7. Damages. — The commissioner tabulates plaintiffs’ costs for a period of 70 days’ delay as follows :
Field Staff Overhead, at $17.56 per day_$1,229.20
Workmen’s Compensation Ins-1 Social Security Tax-I at 414 28.70 Public Liability Ins-J
Mire Insurance, at $1.26 per day- 88.20
Telephone & Telegraph, at $2.35 per day_ 164.50
Photographs, at 144 per flay- 9. 80
Traveling Expenses, at 65jé per day- 45.50
Electricity, at $2.39 per day- 167.30
1,733.20
Office Overhead, 10%- 173.32
1, 906. 52
Temporary heat, at $33.70-$2,359.00
Office overhead, 10%_ 235.90
2, 594.90
Less amount paid to plaintiffs by defendant for
temporary heat, including 10% overhead- 1, 563. 44
- 1,031.46
Total_ 2, 937.98
We think the commissioner’s daily rates for fire insurance, telephone and telegraph, photographs, traveling expenses, and electricity are correct, but we think the daily rate for field staff overhead should be $28.19, instead of $17.56, as the commissioner finds. The commissioner excluded from the field staff overhead the amount paid Engineer Mathis, apparently because Mathis left the job long before it was completed. However, the testimony shows that he was on the job throughout the period of delay due to the failure to furnish on time the models for the ornamental carvings, and for some considerable time thereafter. For the period the work was delayed on this account, therefore, plaintiffs incurred additional costs on account of his salary. This was $5.71 per day. Assistant Superintendent Bateson was also on the job throughout this period of delay, and for some considerable time thereafter, and his daily salary for each day thereof also should be included. This was $7.14 per day.
The commissioner having made no allowance for Assistant Superintendent Bateson, of course did not include the *481 workmen’s compensation insurance paid on account of Ms salary. Tliis amounted to 10 cents per day. Nor, for the same reason, did he include the social security taxes paid on account of Engineer Mathis. This amounted to 4 cents per day. Therefore, the costs for workmen’s compensation insurance, social security taxes, and public liability insurance should have been at the rate of 55 cents a day, instead of 41 cents a day, as found by the commissioner.
The commissioner allows $173.32 for central office overhead, being 10 percent of the total cost for field staff overhead, workmen’s compensation insurance, social security tax, public liability insurance, fire insurance, telephone and telegraph, photographs, traveling expenses, and electricity. We think this is improper.
Where the defendant orders extra work to be done, it is customary to add to the cost of the labor and material necessary to do the extra work 10 percent for field and central office overhead. This is the proper procedure in such cases. But here there was no additional expenditure for extra work.
It is exceedingly difficult to determine from the testimony the extent of plaintiffs’ damage in this case on account of central office overhead. No rule has been found that can be satisfactorily applied under the facts of this case; but taking all the facts and circumstances into consideration, we find and adjudge that plaintiffs have been damaged in this respect in the total sum of $750.00.
Plaintiffs’ daily costs during the period of 32 days’ delay, exclusive of central office overhead, were as follows:

*482 Ne allowance ís mado fee temper«a?y beat; ¥be findings áe? tee §8 da-ys^ delay dne te tee ebanges i» tee ; asá- tee Judged M-brar-j; We have held teat plaintiffs ase net enteteed te Passages íes? tee delay due te teese ebanges; Plaintiffs? therefore? baro already been paid mere tea» tete affiteunt te w-bíe-b tbey ase entitled íer tenseperary beat and; benee? ne further alíewanco teerefer is made;
Plaintiffs? therefore? are entitled te reeover fer the 82 days1 delay $4?8867&6; Judgment fer teas amount will be entered.-ít is so ordered;
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.
ON MOTION EOR NEW TRIAL
June 5, 1944
On plaintiffs’ motion for new trial, which was allowed by the Court June 5, 1944, the judgment for plaintiffs which was entered April 3,1944, was withdrawn and set aside, and in lieu thereof a new judgment for plaintiffs was entered in the sum of $2,965.36'.
A memorandum opinion by Whitaker, Judge, was filed June 5, 1944, as follows:
In their motion for a new trial plaintiffs say we erred in making no allowance for temporary heat for the 32 days of delay for which we held the defendant responsible. We disallowed any amount for temporary heat for this time due to the fact that the defendant had allowed plaintiffs temporary heat for two periods of delay, one of 24 days due to a change in the penthouses, and one of 14 days due to a change in the Judge’s library. Since we held the defendant was not responsible in damages for these delays, we held that the amount allowed for temporary heat for these two periods of delay should be offset against what plaintiffs were entitled to for temporary heat for 32 days’ delay for which.we held defendant was responsible.
Plaintiffs point out that the allowance of temporary heat *483 for the two periods of delay of 24 days and 14 days was not an allowance of damages for defendant’s wrongful act in causing these delays, but was for an item of additional cost incident to the change made in the penthouses, involving, in the opinion of the contracting officer, a delay of 24 days, and in the changes in the Judge’s library involving, in the opinion of the contracting officer, a delay of 14 days.
We think plaintiffs are correct. The contracting officer advised plaintiffs that payment for temporary heat could be made only where the cost of such heat was incidental to changes, and that he had no authority to allow a claim for damages (finding 17). It, therefore, appears that the allowance was for extra cost incident to the changes, and was not an allowance for damages for defendant’s alleged wrongful conduct. It was, therefore, improper for us to offset against plaintiffs’ claim for temporary heat for the 32 days, for which we held the defendant liable, the amount that had been allowed plaintiffs for temporary heat due to the changes in the penthouses and the change in the Judge’s library. For these 32 days of temporary heat the plaintiffs are entitled to recover the amount of $1,078.40.
Plaintiffs’ motion for a new trial is granted and the judgment heretofore entered of $1,886.96 is withdrawn and set aside, and in lieu thereof a judgment will now be entered in favor of the plaintiffs and against defendant in the amount of two thousand, nine hundred sixty-five dollars and thirty-six cents ($2,965.36).