MaddeN, Judge,
concurring:
I concur in the decision of the court, and agree with its analysis of the evidence and the conclusions which it draws therefrom. I wish, however, to discuss two additional points which I regard as important.
First. I think that, in the circumstances, there would have been no breach of contract on the part of the United States even if the plaintiff had suffered from a lack of labor. Paragraph S-C 3 of the specifications is quoted in finding 3 and in the opinion of the court. It relates to the employment of union labor, which the plaintiff apparently “desired and requested.” The plaintiff’s position, with regard to this pro *393 vision of tbe contract, is very simple. It is that the Government guaranteed him an adequate supply of qualified union labor as he should requisition it and that, if the supply was not forthcoming as requested, the Government breached its contract and became liable to him for all damages resulting from the inadequacy of the supply of labor. The plaintiff’s counsel stated at the oral argument that he did not claim that the Government had not done its best to supply the plaintiff with labor, but only that it did not supply it. And the plaintiff’s evidence and briefs contain no suggestion that there was any lack of diligence, or of consideration of the plaintiff’s needs, on the part of the agents of the Government who conducted its employment service. The plaintiff has cited Young-Fehlhaber Pile Co. v. United States, 90 C. Cls. 4, as supporting his construction. I do not so read that decision. In our recent case of Yorh Engineering and Construction Company v. United States, No. 45282, [post, p. 613], in answer to a contention of the plaintiff in that case identical with the plaintiff’s contention in this, we said that the Government’s obligation was to permit the contractor to get his work forward, by allowing him to obtain labor outside the contract, if the contract source proved to be harmfully inadequate. We pointed out that in the FeKUiaber case the contractor had requested permission to use his own men, but the Government’s agents had “in effect declined to consider” this request and had told him to “go along with what he had.”
In the instant case the plaintiff never even resorted to the alternative source of labor supply which was expressly written into paragraph S-C 3, as follows:
In the event, however, that qualified workers are not made available from the membership of the unions within forty-eight hours (Sundays and holidays excepted). after a request therefor is filed by the contractor, and the employment agency has notified the unions of the receipt of such request, such labor may be chosen by the contractor from other qualified workers, supplied by employment agencies designated by the United States Employment Service.
" There is not a word in paragraph S-C 3 of the specifications which says or suggests that the Government guarantees *394 an adequate supply of labor. The paragraph did not apply to the plaintiff at all unless and until he “desired and requested” to use union labor. If he so desired and requested, S-C 3 provided an orderly procedure whereby he could make his contacts with the unions and the Government could keep its employment and statistical records. He, not the Government, had the choice of whether he wanted to deal with union labor. According to his contention, he could have so chosen, though there were practically no union men in the vicinity, and the Government would have underwritten the deficit and all resulting damages. After the supply proved inadequate, as the plaintiff asserts that it did, he, not the Government, had the choice of whether he would employ non-union workers. If he did not, in spite of his predicament, choose to do so, the plaintiff contends that the Government could do nothing but let damage claims pile up against it.
No such contract was written. We would not be justified in resorting to implication to create such an extraordinary bargain. The Government does not require contractors to agree, at their peril, to do the impossible. It provides, in Article 9, that if delays occur due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, the contractor is excused from going forward, no matter how much the Government may be damaged. Yet the plaintiff sues the Government for not doing-the impossible, even though it did not promise to do it. I think there was no such contract and hence, of course, no breach.
Second. The plaintiff claims that, regardless of what the facts are with reference to the adequacy of the supply of labor, this court is bound to find that the supply was inadequate, and that it delayed the plaintiff 120 days, because the Contracting Officer so found.
I do not understand how an officer in an executive department of the Government, who has not by statute, or even by contract, been given authority to decide that the Government is liable to the plaintiff in damages for breach of contract, can so decide, and thus foreclose this court, which has, by an elaborate and deliberately considered statute, been given jurisdiction to decide that very question, from deciding it. This court has no right to abdicate the important duty con *395 ferred upon it, and to assume the role of merely computing damages in dollars and cents to fill out another man’s judgment. As a judgment, then, I think the decision of the Acting Contracting Officer is completely irrelevant to our case. He did his work. It was to determine whether the Government would forgive, or insist upon, liquidated damages for late completion of the work. We should do our work. It is to determine whether the Government breached its contract, and if so, whether the plaintiff incurred damages as a result of the breach. The Acting Contracting Officer’s “determination,” not being binding as a judgment, how does it stand as evidence of the facts? It is worthless. He testified, and nobody doubts, that he does not and never did know anything about the facts.