Per Curiam:
This case was referred pursuant to Rules 54(b) and 55(b) and the order of the court of May 18, 1964, to Trial Commissioner Marion T. Bennett, with directions to make his recommendation for conclusion of law on defendant’s motion for summary judgment. The commissioner has done so in an opinion filed October 28, 1964. Defendant sought review of the commissioner’s opinion and recommendation for conclusion of law, briefs were filed by the parties and the case was submitted to the court without oral argument of counsel. Since the court is in agreement .with the opinion, as modified by the court, and with the recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, defendant’s motion for summary judgment is denied and the case is returned to the trial commissioner for further proceedings.
*816 OPINION OF COMMISSIONER
Defendant here challenges plaintiff’s breach of contract claim in the amount of $788,185.89 [1] by a motion for summary judgment and insists upon finality of an administrative determination in which plaintiff was the loser.
Plaintiff entered hito a contract with the Department of the Air Force pursuant to which plaintiff was to construct and maintain at its expense a new coaxial submarine cable between the United States and England through intermediate points, including Newfoundland, Greenland and Iceland. This was known as project “Deep Freeze.” [2] This contract was predicated, according to its language, on the “urgent military needs” of the United States Air Force. It provided that plaintiff should construct a minimum of 48 duplex teletypewriter channels or, alternatively, 24 such teletypewriter channels and 1 voice channel. Plaintiff was to furnish 13 channels for the exclusive rental and use of the defendant for 10 years with the remaining channels to be used for commercial purposes. All incidents of ownership were to repose in plaintiff. The completion date was to be within 4 years after approval of the contract. Upon approval of the contract, plaintiff agreed to commence construction but was not to place any actual orders for cable until it had obtained all governmental approvals required for performance. Clause2(h) provided:
2. Cable facilities
^ ‡ ‡
(h) The Government shall render assistance to the Contractor in the following:
*817 (1) Providing foreign cable landing sites and other facilities or approvals necessary to the performance of this contract, * * *.
The contract in issue also contained a standard disputes clause, paragraph 16, providing that disputes concerning questions of fact arising under the contract, if not disposed of by agreement, should be decided by the contracting officer, subject to appeal by the contractor in 30 days to the Secretary, whose decision was to be final, absent fraud or such arbitrary, capricious or grossly erroneous action as necessarily to imply bad faith or lack of substantial evidence in support of the decision.
Clause 7(a) of the contract provided:
7. TERMINATION EOR THE CONVENIENCE OE THE GOVERNMENT
(a) This contract may be terminated by the Government * * * whenever the Contracting Officer shall determine that such termination is in the best interests of the Government. * * *
In the event of such termination, the contractor was entitled to recapture its costs subject to the limitations there laid down. Clause 8 of the contract provided that the defendant could terminate it for default of the contractor, except for those failures arising beyond the fault or negligence of the contractor, such as acts of any government, foreign or domestic, prohibiting the laying or landing of the cable or granting approvals necessary for completion of the project. Clause 7 (h) provided in pertinent part:
7. Termination eor the convenience oe the government
$ $ $ $ «
_(h) Any dispute arising out of the termination of this contract under this Clause shall be decided in accordance with the procedure prescribed in the “Disputes” Clause hereof, * * *.
Plaintiff went ahead with the work, secured approval of the project in principle by the Federal Communications Commission (FCC), and entered into negotiations with the *818 governments of tbe aforementioned foreign countries where landing sites and other approvals had to be obtained. In these negotiations, plaintiff initially had the support of agencies of the defendant.
Plaintiff did not obtain the required landing rights from the foreign governments and construction of the proposed cable facilities covered by the contract did not materialize. Plaintiff alleges that in May 1956 the Department of Defense informed the FCC that it was no longer behind project “Deep Freeze.” In July 1956 the FCC notified plaintiff that it proposed to withdraw approval of the project and, in fact, did so on September 19, 1956. Plaintiff also alleges that in July 1956 the United States Embassy in London advised plaintiff the project no longer had the support of the defendant and that plaintiff’s representatives should return to the United States.
The United Kingdom had advanced objections to the project. Plaintiff says that defendant’s withdrawal of support pledged by the contract made its performance impossible and was a breach thereof, entitling plaintiff to damages.
Later in 1956, the Air Force is alleged to have instructed plaintiff not to incur additional expense under the contract. In 1957, defendant advised plaintiff that the defense requirements had expanded, and consideration was being given by defendant to a new cable substantially different from plaintiff’s. Plaintiff alleges ability and willingness at all times to proceed.
On April 11, 1958, plaintiff wrote to the Air Force Procurement District requesting that defendant formally terminate the contract for its convenience under clause 7, thereby permitting reimbursement to plaintiff of the sums it had spent. Eventually, on July 23, 1959, the Air Force notified plaintiff that since the cable was still needed the Government would appear to have no obligation to terminate. This decision was later confirmed 'by conferences between the parties and a letter of March 10, 1960, from P. B. Taylor, Assistant Secretary of the Air Force for Materiel, to plaintiff’s attorney. The text of this letter is as follows:
Since our meeting on February 12,1960,1 have given careful consideration to the question of whether termi *819 nation of Contract AN 33 (600)-26137 between the Commercial Cable Company and the United States Government would be appropriate.
It seems clear that while the Department of the Air Force was obligated under the contract to furnish certain assistance to the company, the risk of successful construction of a proposed transatlantic cable rested with the Commercial Cable Company. In this respect, the Brief of January 7, 1960, submitted by your firm on behalf of the Commercial Cable Company stated at page 12:
“The termination provisions did not give the Company the right to terminate nor did they provide for any automatic termination in the event performance of the contract proved impossible due to causes beyond the control of either Company or the Government. However, this fact in no way relieved the Government of its important contractual obligations to assist the Company in the completion of the project so long as the project had not been formally terminated.”
Thus, the question which you have presented for any consideration is whether failure to complete the transatlantic cable was caused by failure of the Department of the Air Force to carry out its obligations to assist the contractor in obtaining landing rights and obtaining FCC approval.
I have given careful consideration to the facts presented by you and to your argument that actions taken by the Air Force prior to approval of the contract, and the alleged statements of certain Air Force officials to the Company in 1956, indicate the extent of assistance which the Air Force was obligated to give to the Commercial Cable Company. It is my conclusion that the Air Force furnished all the assistance it was required to furnish under the contract. For that reason, and since I have seen no evidence that the Department of the Air Force requirement for transatlantic cable facilities covered by the contract has ceased to exist, I am unable to conclude that the Department of the Air Force should terminate the subject contract for the convenience of the Government.
The issue posed by the pending motion is whether the above decision was an administrative one dispositive of the matter in absence of allegations attacking its finality. Defendant says that consideration of this issue involves the question of whether, under the disputes provision of the *820 the right to a trial in this court.
As noted above, the disputes clause of the contract required submission of all disputed questions of fact arising under the contract for administrative determination by the contracting officer, and under clause 7(h) this included disputes arising in the event there was a termination. Paragraph 21(b) of the contract defines the term “contracting officer” as follows:
21. DEFINITIONS
% % ij< £
(b) The term “Contracting Officer” means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer; and the term includes, except as otherwise provided in this contract, the authorized representative of a Contracting Officer acting within the limits of his authority.
The name of one Daniel D. Carter is affixed to the contract as the contracting officer. There is nothing before the court showing any findings or decision by him at any time. The letter of March 10,1960, relied upon by defendant as a final administrative decision, is signed by P. B. Taylor, an Assistant Secretary of the Air Force, but it does not purport to be a ruling on appeal from the contracting officer. On the face of the documents, therefore, defendant’s contention that there has been an administrative finding of fact and decision under the disputes procedures of the contract is without merit. In addition, the language of the letter of March 10 shows that it concerns the basic question “of whether termination of Contract AF 33(600)-26137 between the Commercial Cable Company and the United States Government would be appropriate.” The letter concludes: “* * * I am unable to conclude that the Department of the Air Force should terminate the subject contract for the convenience of the Government.”
Between these sentences the Assistant Secretary does conclude that defendant has rendered all the assistance it was required to furnish under the contract. This was a gratuitous conclusion of law. Defendant seems to feel that the letter is an administrative determination of disputed ques *821 tions of fact equivalent to a decision thereon under the disputes clause of the contract. That clause was never invoked or intended to be invoked by either side and there has been no determination thereunder. The question of whether to terminate is not subject to disputes procedure. All that was really and properly decided was whether the Government should terminate the contract. It alone had the authority and discretion to decide whether to take such action. It decided not to terminate and its decision thereon is conclusive, absent bad faith or clear abuse of discretion. • See John Reiner & Company v. United States, 163 Ct. Cl. 381, 389,390, 325 F. 2d 438, 442, 443 (1963), cert. denied, 371 U.S. 931 (1964), and cases cited. Plaintiff does not challenge this nor seek to overturn the decision not to terminate. A decision not to terminate for the Government’s convenience cannot by some judicial osmosis, as defendant supposes, be turned into one under the disputes clause with a finality depriving plaintiff of his day in court on a breach of contract claim which was not before the Assistant Secretary and could not have been decided finally by him in any event.
The plaintiff submitted alleged costs in the negotiations about termination which are substantially similar in character and amount to those now asserted. This understandable coincidence does not mean that the Assistant Secretary was considering a breach of contract claim or even a dispute of the character contemplated by the disputes clause. He is barred by statute from any final decision on the former. He could consider the latter only if that clause was invoked, as where, for instance, there was a termination and a difference of opinion arose on allowable costs. The contractor could appeal an adverse decision thereon under the procedures of the disputes clause (paragraph 16) as permitted by the termination clause, paragraph 7(h). But, there has been no termination and no decision therefore about the validity of plaintiff’s claimed costs.
This was a plain and simple negotiation between the parties Wherein plaintiff sought to invoke a procedure to avoid litigation. The language of the disputes clause contemplates such an effort at agreement. It was understood that whatever decision was reached by defendant on the issue *822 of whether there should be a termination was to be “without prejudice” to either party’s rights to proceed otherwise. It was not an adversary proceeding. Full details of the conference, attended by plaintiff’s attorneys and representatives of the Air Force, are set forth in affidavits before the court by two of plaintiff’s attorneys present at the time. There is no affidavit contradicting the ones we have which represent that full agreement existed that the negotiations on prospective termination were “without prejudice” to plaintiff’s legal rights. The letter of March 10,1960, which was the product of those negotiations, does not therefore preclude suit.
Plaintiff’s claim here is for breach of contract and depends for its resolution upon interpretation of the contract which is a question of law asserted now by plaintiff for the first time. Claims for unliquidated damages are outside the disputes clause and not properly a subject for unilateral administrative determination. The decision in United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709 (1963), relied upon by defendant, does not support its position on this point. Indeed it is inapposite. In that case plaintiff conceded that the dispute involved was within the scope of the disputes clause and the Supreme Court noted that fact (373 U.S. 709, 714). It has been repeatedly held that the disputes clause is not applicable to claims for damages for breach of contract against the Government. Ekco Products Company v. United States, 160 Ct. Cl. 75, 312 F. 2d 768, 773 (1963); Volentine and Littleton v. United States, 144 Ct. Cl. 723 (1959), 169 F. Supp. 263; Railroad Waterproofing Corporation v. United States, 133 Ct. Cl. 911 (1956), 137 F. Supp. 713; Continental Illinois National Bank, et al., v. United States, 126 Ct. Cl. 631 (1953), 115 F. Supp. 892; Anthony P. Miller, Inc. v. United States, 111 Ct. Cl. 252 (1948), 77 F. Supp. 209; Silberblatt & Lasker, Inc. v. United States, 101 Ct. Cl. 54 (1944); and Irwin & Leighton v. United States, 101 Ct. Cl. 455 (1944).
It cannot be said in this situation that plaintiff has any administrative remedy it had the responsibility to pursue. Ekco Products, supra; Railroad Waterproofing, supra. Plaintiff was not given and could not be granted relief administratively for the alleged breach. To be compelled now *823 to go through, expensive and time-consuming, fact-finding procedures administratively, under the circumstances of this case, would be an exercise in futility which would not expedite the administration of justice. Such procedures are not required by the contract, nor by statute, court decision or reason.
It follows that defendant’s motion for summary judgment must be denied and plaintiff should be accorded a trial to see if it can prove the alleged breach of contract and damages.

 The claim has been reduces by plaintiff, as a result of pretrial audit procedures, from tbe $804,000 alleged in tbe petition.

 Tbe petition, paragraph 3, states tbe date of tbe contract as January 19, 1954, which is admitted in tbe answer. Paragraph 23 of tbe contract provided that it was not to be binding until approved by the Secretary of the Air Force or bis duly authorized representative. Paragraph 4 of the petition gives that date as January 11, 1955, and is admitted by the answer. The contract, attached as Exhibit A to the petition, shows on page 41 the date of Air Force approval as November 22, 1954, and the title page of the contract, page 8 of the petition, carries an unexplained date of May 81, 1960. The contract number was AF 33(600)-26137.