**DEAN CONSTRUCTION CO., Inc.**
v.
**The UNITED STATES.**
No. 95–67.

United States Court of Claims.
June 20, 1969.

Harold Blasky, New York City, for plaintiff. Max E. Greenberg, New York City, attorney of record. Trayman, Harris, Cantor, Reiss & Blasky, New York City, of counsel.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

COWEN, Chief Judge.

This case involves two causes of action. In the first, plaintiff alleges that defendant breached its contract with plaintiff by delaying plaintiff's performance of a contract to build a new facility at the National Institutes of Health in Bethesda, Maryland. In the second cause of action, plaintiff alleges that the General Services Administration Board of Contract Appeals decision, which denied plaintiff's request for additional time extensions beyond those granted by the contracting officer, is arbitrary and capricious and not supported by substantial evidence, and thus should not be accorded finality by this court in reviewing the contract dispute under the provisions of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1964). Plaintiff has made a motion for summary judgment as to both its causes of action. Defendant has moved for summary judgment in the second cause of action (under the Wunderlich Act), and opposes plaintiff's motion for summary judgment on the breach claim. For the reasons set out in the opinion, we grant defendant's motion for summary judgment on the second cause of action, and deny plaintiff's motion for summary judgment in both causes of action.

On June 25, 1959, plaintiff entered into a contract with defendant, represented by the General Services Administration (G.S.A.), to construct new operating facilities for the National Institutes of Health. The contract contained a standard "Changes" clause which allowed for time extensions by the contracting officer. The contract also contained a liquidated damages provision, but did not contain a "Suspension of Work" provision. A contract price of $1,469,000 was set, and the time of performance was to be 510 calendar days from receipt of Notice to Proceed, which was given on July 14, 1959; the project was thus to be completed by December 5, 1960. However, defendant did not actually accept the project as substantially completed until January 30, 1962, an overrun of 421 days. When the 326 days allowed by the contracting officer as time extensions (to be discussed below) are taken into account, the plaintiff still overran the completion date by 95 days. Accordingly, liquidated damages for 95 days were assessed against plaintiff pursuant to the terms of the contract.

On July 9, 1962, plaintiff sent a letter to the contracting officer, setting forth 20 enumerated instances of defendant's alleged disruptions and delays of the project. Each item was briefly described, and plaintiff's previous correspondence and defendant's action (or inaction) were noted. On the basis of the delays described, plaintiff claimed losses of $383,806.34, and sought an equitable adjustment of the contract price.

On October 25, 1962, plaintiff sent another letter to the contracting officer. In this letter plaintiff repeated the several items of delay that had been included in its letter of July 9, 1962, and, in addition, set forth 25 additional delays, making a total of 45 numbered items * of delay for which plaintiff claimed defendant was responsible. After each

---

* Actually, there were 47 items in all, because two of the items were divided into two separate subparts.

item was listed the number of days plaintiff contended were lost due to the delay. The total claimed days of delay amounted to over 5,600, or more than 15 years. However, the claim apparently included a considerable amount of overlap, and plaintiff requested a time extension of only 823 days, though it did not attribute any specific number of days' delay to any separately described cause in arriving at this figure.

On April 23, 1963, the contracting officer formally notified plaintiff that its claim for money damages was being disallowed because the provisions of the contract precluded payment for the damages covered by plaintiff's claims. The contracting officer stated that the matter of time extensions would be dealt with later. The denial by the contracting officer was timely appealed to the Board by plaintiff, but both plaintiff and defendant later moved the Board to dismiss the appeal for want of jurisdiction. Both parties agreed that the monetary damages claim was a breach claim (there being no "Suspension of Work" clause) that was not within the Board's jurisdiction. The Board then dismissed the appeal for want of jurisdiction, General Services Board of Contract Appeals, Docket No. 1050, May 26, 1965.

Meanwhile, on December 16, 1963, the contracting officer responded to plaintiff's request for time extensions. In a formal notice to plaintiff, the contracting officer allowed the following time extensions: [1]

|  | Calendar days |
|---|---|
| Item No. 1—Lack of drawings from elevator contractor | 61 |
| Item No. 6—Delay in approval of mechanical and electrical equipment | 60 |
| Item No. 13—Delay in approving movable metal partitions | 139 |
| Item No. 14—Delay in approving metal case work | 6 |
| Items Nos. 3, 9, 18, 19, 20, 26, 27, 28, 29, 32, 33, 34, 35, 36, 37, 38, 39, 40, and 44 | 60 |
| Total | 326 |

In the same letter, the contracting officer assessed liquidated damages of $11,875 for 95 days. Attached to his decision was a formal statement of findings of fact, which indicated the basis for the time extensions granted for Items 1, 6, 13, and 14 (essentially delays for which the contracting officer felt the government was responsible), as well as the reasons for rejecting plaintiff's other claims. The additional time extensions were denied either because the contracting officer felt plaintiff was not entitled to them, or because they overlapped with periods of time for which extensions had already been granted. The 60 days which were attributable to the last group of items shown above were allowed as an "equitable" time extension, although the contracting officer stated that it was not possible to pinpoint exactly how much time was due for each item.

The letter of the contracting officer served as the basis of appeal to the Board under the provisions of the contract. At the Board hearing, plaintiff contested the contracting officer's disallowance of the time extensions requested and urged that liquidated damages were improp-

---

1. Item numbers refer to the numbered items in plaintiff's letters to the contracting officer. These numbers were consistently used throughout the proceedings, and will be used in this opinion. It should be remembered that Items numbered 1–20 are identical in plaintiff's letter of July 9, 1962, seeking money damages, and its letter of October 25, 1962, seeking time extensions.

erly assessed. Although initially plaintiff claimed that some of the time extensions granted for certain items were insufficient, ultimately plaintiff put in issue only items for which no time extension had been allowed, or which were included in the group of items for which collectively performance time was extended for 60 days. The Board, in its case No. 1201, denied plaintiff any further time extensions. In its opinion issued November 26, 1965, the Board recited the deficiencies in plaintiff's proof, and then denied plaintiff's appeal on the grounds plaintiff had failed to discharge its burden of showing the extent, if any, of excusable delay beyond that allowed by the contracting officer. Plaintiff seeks review of the decision in this court.

I

We turn first to plaintiff's request for review of the Board's decision that plaintiff did not show entitlement to a greater time extension than the contracting officer allowed—plaintiff's second cause of action. Because of the nature of the proof offered to the Board, we think the Board's decision should be sustained.

■ The evidence presented by plaintiff to the Board was not sufficient to convince the Board that the contracting officer had unjustifiably refused plaintiff any time extensions to which it was entitled. In view of the Board's adverse decision, plaintiff has the burden of demonstrating to the court that the Board arbitrarily rejected plaintiff's evidence or that facts affirmatively found by the Board are based on insubstantial evidence. We think plaintiff has failed to carry that burden.

It is not necessary or possible for us to reweigh every piece of evidence which was introduced before the Board to see if we would agree with each finding were we to make it ourselves. United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). We merely inquire whether the Board in resolving the controversy, as it did, on the basis of disputed facts, had substantial evidence to support its determination. Koppers Co., Inc. v. United States, 405 F.2d 554, 186 Ct.Cl. 142 (1968). With this in mind, a brief review of the Board's record and opinion is in order.

By its own admission, plaintiff was severely handicapped at the Board hearing because of plaintiff's witnesses. Plaintiff presented the testimony of a witness who never worked for plaintiff company, which apparently was inactive at the time of the Board hearing. The witness, Mr. Miller, was not an accountant, engineer, or auditor, although he had worked as a construction supervisor, and was, according to plaintiff's attorney, skilled in analyzing construction data. Mr. Miller stated that his testimony was based on a review of plaintiff's files and on nothing else. He had never seen the project and had nothing to do with its construction. Plaintiff's other witness, Mr. Rothenberg, was a graduate engineer who was project administrator but was not on the jobsite more than once a week for a day at a time. It was Mr. Rothenberg who identified as company records the progress reports and construction schedules which were relied on by Mr. Miller. Plaintiff's counsel explained that the man who was in actual charge of the jobsite was no longer employed by plaintiff, was engaged in aerospace work in Mississippi, and was not available to testify. Thus, most of plaintiff's case was based on hearsay. The Board commented on this evidence in the course of the hearing and in its opinion, and indicated that the member who heard the testimony (and who wrote the Board's opinion) admitted the evidence over the government's objection with some hesitation, and then carefully explained to counsel that the evidence was received subject to the understanding that its character might affect the weight to be given such evidence.

In all, plaintiff put in issue about 30 of the itemized claims for time extensions. The Board's opinion would have

been more helpful had the Board made findings of fact on each item of claimed excusable delay, rather than confining its decision to a general description of the uncertainty of plaintiff's evidence, with a detailed consideration of only one claim (Item 12) as an example. But at this stage of the proceedings, we do not think it serves a useful purpose to re-write the Board's opinion. Therefore, we observe merely that the evidence offered by the plaintiff fell generally into two categories: (a) evidence that certain delays were entitled to specific periods of time extension, and (b) evidence that the items grouped together in the contracting officer's allowance of 60 days covered periods of excusable delay of more than 60 days.

To illustrate the nature of the proof made at the Board hearing on the delays included in category (a), we summarize evidence relating to Item 5.

Item 5 involved a claim by plaintiff that it was entitled to 13 extra days because of the extra depth of concrete caisson work plaintiff had to accomplish as a result of a change order issued by the contracting officer. As part of the contract, plaintiff was required to install about 40 caissons. On August 28, 1959, plaintiff notified the construction engineer in the field that certain walls of some of the foundation piers were collapsing due to soil conditions. Thereupon, plaintiff was instructed to deepen the piers where necessary. Plaintiff claimed that the foundation work would have been completed by September 9, 1959, rather than on September 25, 1959, the actual completion date, but for the extra work required.

Some of the caissons were to be installed near the area where an elevator slab was to be poured. The contracting officer in his decision of December 16, 1963 (in response to plaintiff's Item 1 claim), had allowed a 60-day extension of time starting September 15, 1959, because another contractor was late in furnishing drawings for the elevator construction work. (See part II of this opinion, *infra,* for the contracting officer's finding.) It was the government's position before the Board that this 60-day time extension also "cured" any delay plaintiff may have encountered in deepening the caissons, because the delays were concurrent.

The Board heard testimony on behalf of plaintiff from Mr. Miller, who said that plaintiff's construction records showed that plaintiff was delayed in pouring the elevator pit slab because of the delay caused by deepening the caissons. Testimony to the same effect was given by Mr. Rothenberg. In rebuttal, the government presented the testimony of a Mr. Pfeiffer, a GSA construction engineer. Mr. Pfeiffer, who was an engineer on the jobsite, but who testified mainly on the basis of his examination of government construction records, stated that the contractor would not have been delayed beyond the 60 days' extension granted due to the elevator delay. Mr. Pfeiffer's testimony certainly was not inherently implausible, though we have no way of knowing for certain whether it was any more reliable than Mr. Miller's.

Similar observations may be made regarding the evidence heard by the Board in each instance where plaintiff undertook to establish a specific period of excusable delay. In each such instance, plaintiff's evidence was met by evidence to the contrary presented by the government. With conflicting evidence to evaluate, the Board resolved the issues in favor of the government, and we cannot say that the decision is not supported by substantial evidence.

The second set, or category (b), of claims presented to the Board involved the contracting officer's allowance of 60 days collectively for plaintiff's claimed Items 3, 9, 18, 19, 20, 26, 27, 28, 29, 32, 33, 34, 35, 36, 37, 38, 39, 40, and 44. Plaintiff changed its calculations several times and the record is not clear as to the additional time it ultimately claimed, except that it was certainly more than the 95 days for which liquidated damages were assessed.

Most of the alleged delays plaintiff attributes to this group of items stem from change orders issued pursuant to the "Changes" clause of the contract.

Plaintiff's witness, Mr. Miller, testified that plaintiff's construction records showed that plaintiff was performing work on most of the changes up to the date the project was finally completed and accepted by GSA, January 30, 1962. Plaintiff's evidence also showed that the contracting officer allowed no time extensions for change order work after July 23, 1960, except for the 60 days. On the basis of this evidence, plaintiff contended that the Board should conclude that the contracting officer's allowance for the change order work, was unreasonable because, in fact, that work was in progress right up to completion of the project. Plaintiff's witness also said that its records indicated that change order work was performed on 255 calendar days (188 working days) after July 23, 1960, well over the 60 days allowed.

On cross-examination, plaintiff's witness, Mr. Miller, acknowledged that he was relying solely on plaintiff's records, that a time extension of 266 days had been granted by the contracting officer for other reasons (see part II of this opinion for a discussion about the 266 days), and that the value of the change order work was about $38,000 (this figure was later corrected to $34,800 by one of the government's witnesses).

Relying on project records, the government's witness testified that the dollar amount of the project, including change orders, which remained to be performed after July 1960, was approximately $580,000, and that the remaining time worked was approximately 510 days. The government showed that $34,800 bears approximately the same relation to $580,000 as 30 days bears to 510 days (one is approximately 6 percent of the other). On the basis of this computation, plaintiff would have been entitled to a time extension of only 30 days for the extra work due to the change orders, instead of the 60 days granted. Of course, there are substantial uncertainties involved in using such a computation for determining the additional time required for change order work. Nevertheless, the computation constitutes a very rough estimate of the time required to complete the work called by each change order, and plaintiff made no effort to show that the use of the computation was unreasonable in view of the generally uncertain and indefinite evidence presented by plaintiff.

The record does not show that the Board decision rested on the computation mentioned above. Instead, the Board found that in the de novo hearing before it, plaintiff had failed to discharge its burden of showing the inadequacy of the time extension granted by the contracting officer as an equitable adjustment arising from the issuance of the change orders. We think the Board's determination must be upheld, because the sum total of plaintiff's proof amounted to no more than a showing that plaintiff performed a considerable amount of work on change orders after July 1960. The evidence falls far short of proving that the completion of the contract was delayed more than 60 days as a result of the change orders involved. As the Board pointed out in its opinion, the language of the "Changes" clause does not automatically entitle a contractor to a time extension in every instance when a change order is issued.

## II

The remaining issue in this case involves plaintiff's first cause of action to recover damages on the ground that the government breached the contract by delaying the contractor's completion of the work for 266 days. In its motion for summary judgment, plaintiff takes the position that the findings of fact made by the contracting officer are binding upon both parties and conclusively establish that 266 days of delay in completing the contract are attributable to the fault or negligence of the government. As previously stated, plaintiff filed a claim with the contracting officer in the amount of $383,806.34 for dam-

ages suffered by reason of the government's delay, but the claim was denied by the contracting officer on the ground that there was no provision in the contract which authorized the payment of additional money for such damages. The decision was appealed to the General Services Board of Contract Appeals, which dismissed the appeal after the government moved, with plaintiff's concurrence, that the appeal be dismissed for lack of jurisdiction.

The contracting officer's findings of fact upon which plaintiff's motion is based read as follows:

*Item 1:* The contractor has requested a time extension of 104 days because of the failure of the General Elevator Company to submit promptly the required layout drawings.

The records show that on August 4, 1959, layout drawings were requested by the contractor from the General Elevator Company, and on August 17, 1959, the contractor requested assistance from the Engineer in obtaining these drawings.

The elevator pit could not be poured until the caissons beneath the pit were completed. These caissons were ready to pour on September 15. However, the elevator insert drawings which were needed for the forming of these caissons were not received by the contractor until November 15, 1959.

As the Engineer considers the late receipt of these drawings a delay of the project as a whole, a time extension of 61 calendar days is recommended and approved.

\* \* \* \* \* \*

*Item 6:* The contractor has requested an extension of 188 days for delay in mechanical and electrical equipment approvals.

The files show that the delays in the approval of this equipment are due chiefly to delays in actions taken by the Architectural Engineer. However, in some cases, delays in the resubmittals of disapproved items are due to the lack of promptness on the part of the contractor. As noted in our letter of February 18, 1960 to the contractor, all drawings, data, etc., for mechanical equipment were approved except for one item. At that time the list of electrical equipment had not been submitted in its entirety.

As the main source of delay was caused by the Architectural Engineer, the Engineer has recommended a time extension of 60 days as an equitable adjustment for the overtime, and a time extension is recommended.

\* \* \* \* \* \*

*Item 13:* A time extension of 139 days has been requested for the delay in approving movable metal partitions.

The records show that in September 1959, drawings for movable metal partitions had been submitted by the contractor to the Architectural Engineer and were disapproved as not complying with specification requirements as to manufacture. Subsequent submissions were also disapproved. As the specifications were written in a manner construed to be restrictive, the Regional Counsel was requested to issue an opinion \* \* \*. Shop drawings were subsequently submitted and approved.

The contractor's request for a time extension is considered reasonable. Therefore, a time extension of 139 days is recommended and approved.

*Item 14:* A request of 145 days' time extension has been made for the delay in approval of metal case work.

It is apparent from the records that the Architectural Engineer would not approve drawings for the metal case work submitted by the contractor until case work samples had been submitted and approved. This situation was later clarified and the contractor's drawings were approved.

As this case work delay was concurrent with the movable partition delay, a time extension to July 17 cannot be considered. However, a time extension for 6 days is recommended and approved.

■ Despite the fact that there was no hearing before the Board and, therefore, no determination by it as to the causes and extent of the delay, plaintiff maintains that it is entitled, on its motion for summary judgment, to an adjudication by this court that defendant is liable, as a matter of law, for the delay damages, and that the trial in this court should be limited to a determination of the amount of the damages. We reject plaintiff's position, because of our consistent holdings that while the unappealed findings of a contracting officer constitute a strong presumption or an evidentiary admission of the extent of the government's liability, such findings are always subject to rebuttal. Robert E. Lee and Co., Inc. v. United States, 164 Ct.Cl. 365, 370 (1964); J. D. Hedin Constr. Co. v. United States, 347 F.2d 235, 245, 171 Ct.Cl. 70, 84 (1965); Vulcan Rail & Constr. Co. v. United States, 158 Ct.Cl. 234, 241 (1962).

Plaintiff, however, would have us ignore these decisions on the ground that in United States v. Carlo Bianchi & Co., Inc., and United States v. Utah Constr. & Mining Co., supra, the Supreme Court held that a contracting officer's finding of fact is a final administrative decision, which is subject to review only under the provisions of the Wunderlich Act. We do not agree. As we read them, the decisions of the Supreme Court rest on the premise that the first binding adjudication on a factual issue arising under the "Disputes" clause of a government contract must come from a properly constituted board or other designated representative of the head of the department, after a hearing before the board on appeal from the contracting officer's preliminary decision. Implicit in the Supreme Court's pronouncements is the concept that the administrative decision to which finality attaches is one made by a board "acting in a judicial capacity." See Utah Constr. & Mining Co., 384 U.S. at 422, 86 S.Ct. 1545, 16 L.Ed.2d 642.

■ A contracting officer usually makes his decisions without a hearing of any kind. He is not under the restraint of having to justify his determinations on the basis of substantial evidence. In reviewing an administrative decision in a contract case, this court applies the substantial evidence test to the administrative record upon which the board's decision is based, rather than to the findings of the contracting officer. See Earl N. Davis, Trustee v. United States, 180 Ct.Cl. 20 (1967).

■ This is not to say that a contracting officer's findings are to be regarded lightly. We have already indicated that they may amount to a rebuttable admission of liability, and this brings us to a consideration of points raised in defendant's opposition to plaintiff's motion for summary judgment on plaintiff's first cause of action. Appended to the government's opposition are two affidavits, which are submitted for the purpose of showing that mistakes were made in the contracting officer's findings. The affidavits are sufficient to demonstrate that there are genuine issues of fact as to the correctness of the findings of fact. However, we cannot agree with the government's contention that the affidavits constitute evidence which erases entirely the strong presumption attached to the findings of the contracting officer. Plaintiff's breach of contract claim cannot be decided on a motion for summary judgment; unless the case is settled, the claim must be tried in the court. We assume that the plaintiff will offer the contracting officer's findings in evidence. If the government then desires to rebut the strong presumption which the findings carry, it must do so by presenting admissible evidence in open court, where its witnesses will be subject to cross-examination.

For the reasons stated above, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment on plaintiff's second cause of action is granted, and the case is remanded to the trial commissioner for trial or such further proceedings as are required for the disposition of this litigation.