**ASSURANCE COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–1350.**

United States Court of Appeals, Federal Circuit.

March 10, 1987.

**1204**

Ron A. Stormoen, Richard Corona & Associates, San Diego, Cal., argued for appellant.

Frank B. Flink, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director and M. Susan Burnett, Asst. Director. Col. Bruce R. Houston, Chief Trial Atty. and John Q. Adams, Office of Chief Trial Atty., Dept. of the Air Force, Air Force Contract Law Center, Wright-Patterson AFB, of counsel.

Before FRIEDMAN and DAVIS, Circuit Judges, and BENNETT, Senior Circuit Judge.

DAVIS, Circuit Judge.

We are asked to overturn a decision of the Armed Services Board of Contract Appeals (ASBCA or Board) awarding appellant very much less of an equitable adjustment than had been sought. We affirm.

## I.

In April 1975 appellant Assurance Company (Assurance) was awarded by the Air Force a fixed-price contract to make improvements to 1,569 family housing units at Travis Air Force Base. Assurance was a joint venture which subcontracted the plumbing and heating work to another joint venture composed of Longhorn Mechanical Company and A-1 Plumbing & Heating Company—the real party in interest.[1] The claims now on appeal are (1) the so-called "crawl space claim"—extra excavation under the houses (to install ductwork and piping) where the vertical crawl space clearances shown on the contract documents were insufficient, and (2) the "A-5 unit plenum claim"—the amount of markup allowable for modifying ductwork. At an earlier stage the ASBCA sustained appellant's entitlement to an equitable adjustment for those two claims and remanded for consideration of the amount of the award. *Appeal of Assurance Company,* ASBCA No. 25254, 83-2 BCA ¶ 16,908 (Oct. 17, 1983).[2] On remand, the contracting officer made a small award and appellant again sought review by the Board. In the decision now on appeal, the ASBCA denied any award for the "crawl space claim," negating the contracting officer's small award, and reduced the contracting officer's award on the "A-5 unit plenum claim." This appeal ensued.

## II.

On the "crawl space claim," the Board refused to grant any award because, in its view, Assurance had wholly failed to show that it (or its subcontractor joint venture) had suffered any injury because of the change in the amount of available "crawl space." There was admittedly an entire absence of proof from books, records, or documentation, and no adequate explanation was offered for their absence. The Board said: "This lack of proof of payment makes it impossible to determine if the workmen who actually performed the work were paid any additional amount for any extra work caused by diminished crawl space. Likewise, on this record we cannot determine if appellant made any additional payment to the subcontractor because of the diminished crawl space irrespective of whether the subcontractor paid any addi-

1. We continue to refer to Assurance because it was the prime contractor with the United States.

2. Appellant had elected to proceed under the Contract Disputes Act of 1978.

tional amount to the workers who actually performed the work."

■ Assurance argues that it presented testimony giving estimates of the increased amount of work (*e.g.*, extra hours of labor performed) and that was enough, where written documentation is missing, for a "jury verdict" or fair approximation of the amount of the equitable adjustment. That may well be true if there is proof that the contractor was in fact injured by the Government's change or breach. *WRB Corp. v. United States*, 183 Ct.Cl. 409, 425 (1968) ("we have allowed so-called 'jury verdicts' *if there was clear proof that the contractor was injured* and there was no more reliable method for computing damages ...") (emphasis added); *Electronic & Missile Facilities, Inc. v. United States*, 189 Ct.Cl. 237, 416 F.2d 1345, 1358 (1969) ("where responsibility for damage *is* clear, it is not essential that the amount thereof be ascertainable with absolute exactness or mathematical precision ...") (emphasis in original); *S.W. Electronics & Mfg. Corp. v. United States*, 228 Ct.Cl. 333, 655 F.2d 1078, 1088 (1981) (same). In *Joseph Pickard's Sons Co. v. United States*, 209 Ct.Cl. 643, 532 F.2d 739, 743 (1976), the Court of Claims said:

> * * * there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. *The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong*, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount. [209 Ct.Cl. at 650, 532

F.2d at 743 (emphasis in original) (citation omitted).] [*Quoting Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).] [3]

■ Here, the critical point is that the Board permissibly found that there was no real proof of any damage, *i.e.*, that Assurance and its subcontractor had not shown that in fact they had suffered any monetary injury as a result of the "crawl space claim." There is good reason to believe that labor costs were not increased since the workers doing the ductwork (underneath the houses) appear to have been paid on a piecework basis (rather than by the hour), and there was absolutely no evidence to the contrary, or that workmen were paid additional money.[4] There were no extra small tool costs because the workers provided their own tools. There was no acceptable evidence of additional equipment costs. Also, there is nothing substantial to show that extra overhead or other additional costs were incurred. Appellant's witnesses never testified that Assurance or its subcontractors actually incurred or had to pay monetary expenses. The result is that, on this record, the ASBCA could properly view the case as one in which the very "fact of damage" had not been proved as to the "crawl space claim." In that situation, all the precedents hold that no award need have been made.[5]

■ As for the "A–5 unit plenum claim," the Board simply determined that the $39.35 per unit cost for each of the 58 A–5 plenum units included all costs and markups. That decision was based on appellant's original claim, and that claim (by Assurance itself) was undoubtedly substan-

---

3. The Court of Claims, being the ultimate finder of the facts, could itself make a "jury verdict" award but this court, being solely an appellate tribunal, cannot do so. In discussing this problem, we refer, not to the power of this court, but to that of the trial tribunals—the Claims Court, the Boards of Contract Appeals, and the District Courts.

4. There was substantial evidence supporting the Board's finding that no extra payments appear to have been made to the workmen.

5. The Board's earlier decision that appellant had shown entitlement on its "crawl space claim" does not mean that some damage was necessarily found. All that was there decided was that appellant could rely on the "crawl space" clearances shown in the contract documents. At that stage the Board did not have before it the evidence adduced on remand and now before us, and indeed recognized that it could not then decide the issue of a proper award.

tial evidence that that was all that Assurance asked from the Government.

### III.

■ Both of the claims before us involve the legal question whether the Board can reduce awards made by the contracting officer to the contractor. For the "crawl space claim," the contracting officer awarded $5,565.31 while the Board awarded nothing. On the "A–5 unit plenum claim," the contracting officer awarded $3,440.19 which was reduced by the ASBCA to $2,282.30 (plus interest). We hold that the Board had the authority to reduce or nullify these awards of the contracting officer.

Before the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, was adopted, the Court of Claims held that an appeal to a contracts board, under the "disputes" clause of a Government contract, "vacated" the contracting officer's decision and entitled the contractor to a de novo hearing before, and de novo decision by, the board. *Southwest Welding & Mfg. Co. v. United States*, 188 Ct.Cl. 925, 413 F.2d 1167, 1184–85 (1969). Later, the Court of Claims again declared that a contract appeals board "was, of course, entitled to examine the matter de novo," and explicitly upheld a board reduction in the contracting officer's award with respect to the claim that had been appealed. *Blount Bros. Corp. v. United States*, 191 Ct.Cl. 784, 424 F.2d 1074, 1085 (1970).

There is no reason to believe that, in enacting the Contract Disputes Act, Congress intended to change this established rule. On the contrary, the Disputes Act itself suggests that, where an appeal is taken to a board or court, the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference or acceptance on appeal. The Act's provision dealing with the contracting officer's decision on a contractor's claim states: "Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding." 41 U.S.C. § 605(a). With respect to "direct access" suits (primarily in the Claims Court) seeking immediate judicial review of the contracting officer's decision, the Act provides that the court suit "shall proceed de novo in accordance with the rules of the appropriate court." 41 U.S.C. § 609(a)(3). Where the contractor chooses to appeal to a contract appeals board, the statute declares that in exercising its jurisdiction "the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Claims Court" (41 U.S.C. § 607(d))—thus placing the board's authority on a par with that of the Claims Court. We must conclude from the face of the Disputes Act that a contract appeals board can, with respect to a contracting officer's decision that has been appealed to it, reduce as well as increase the award made by that contracting officer. We are pointed to nothing in the legislative history that suggests a contrary interpretation.[6]

■ In this instance, the Board reversed the contracting officer's allowance on the "crawl space claim" because the contracting officer testified at the ASBCA hearing that (1) appellant had not submitted cost documentation (on the claim) even though the Government had several times requested such proof, and (2) there was absolutely no supporting documentation for the claim.[7] Obviously, those were adequate grounds for rejecting the contracting officer's award. As for the "A–5 unit plenum claim," the contracting officer likewise testified that he had overstated the award; on the basis of its own view (discussed in Part II, *supra*), the Board granted somewhat less (about $250) than the contracting officer recommended at the

6. We caution that our holding is limited to the very same claim appealed by the contractor, in which the contractor seeks a larger award. We do not consider the boards' authority with respect to a part of the contracting officer's decision which has not been appealed, *i.e.*, a different claim.

7. The Board added that "there is no indication in the record that the CO [contracting officer] realized that this labor was done on a piecework basis."

hearing. This decision, too, was adequately supported.

██ Before the Board the Government alternated between urging that the contracting officer's decision gave Assurance enough compensation and urging that Assurance should receive nothing because the contractor's estimates were unsupported. This imprecise position certainly did not preclude the ASBCA from making its own decision. Nor do we think that the Government is estopped from accepting, or has waived, the benefits of the Board's decision.

AFFIRMED.