**Melvin WILNER, d/b/a Wilner Construction Company, Plaintiff–Appellee,**

**v.**

**The UNITED STATES, Defendant– Appellant.**

**No. 92–5161.**

United States Court of Appeals, Federal Circuit.

May 24, 1993.

Rehearing Denied Aug. 2, 1993.

Order Accepting Rehearing In Banc and Vacating Judgment Aug. 2, 1993.

Matthew R. Rutherford, Atty., Law Offices of Matthew R. Rutherford, San Diego, CA, argued for plaintiff-appellee.

Brad Fagg, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Assistant Attorney General, David M. Cohen, Director, Sharon Y. Eubanks, Asst. Director and Mary Mitchelson, Deputy Director.

1. *Wilner v. United States*, 26 Cl.Ct. 260 (1992).

2. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516, changed the name of the United States Claims Court to the United States Court of Federal Claims.

Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and SCHALL, Circuit Judge.

BENNETT, Senior Circuit Judge.

The United States (government) appeals from a decision [1] of the United States Claims Court (Claims Court) [2]. The Claims Court (1) altered the contracting officer's calculations to increase the quantum of delay damages awarded to Melvin Wilner, d/b/a Wilner Construction Company (Wilner), by $26,-271.49 plus interest, (2) denied a claim for further delay compensation asserted by Wilner, and (3) rejected the government's claims for repayment of $133,094.79 in delay compensation already paid to Wilner. We affirm.

## BACKGROUND

Wilner was engaged by the government to construct an Operational Trainer Facility at Camp Pendleton, California, pursuant to Contract No. N62474–83–C–2280. The undertaking experienced delays which postponed the project's completion by 447 days. Wilner then filed a claim with the Navy's contracting officer, William Lindstrom, to recover the additional costs resulting from the project's delays.

Wilner's claim was principally directed to delay costs arising from: 1) the duct revision work; 2) the open web joist (OWJ) revision work; and 3) the smoke detector work.[3] Wilner alleged that the delay had been caused by the government. Contracting Officer Lindstrom awarded Wilner compensation based upon 260 days of delay.

On review before the Claims Court, Wilner presented evidence relating to the critical path of the project. However, the court determined that the evidence presented by Wilner was inadequate to establish the project's critical path. The court also heard the testimony of Contracting Officer Lindstrom

3. Compensation was also requested for weather related delays; however, the government does not challenge that portion of the Claims Court's decision.

who was called as a witness by the government.

The Claims Court found, based only on the evidence presented by Wilner, that: 1) the compensable critical path delay attributable to the Navy and arising from the duct revision work totaled only 91 days; and 2) the compensable critical path delay resulting from the OWJ and smoke detector revision work was unascertainable.

The court made clear throughout its decision that the best evidence to establish the government's responsibility for delay beyond 91 days would be a critical path analysis.[4] While no such analysis was ever presented, the court perceived more compensable delay than what Wilner had been able to establish. Accordingly, the court then went on to consider the next best available evidence presented at trial in an effort to ascertain the actual amount of delay.

First, the court considered the contracting officer's decision to issue unilateral modifications. The contracting officer had issued unilateral contract modifications granting Wilner extensions of time. Wilner argued that these modifications constituted an admission by the contracting officer that the delays were the fault of the government.[5] However, the Claims Court disagreed and gave no evidentiary weight to the contracting officer's decision to issue unilateral modifica-

tions. The court next considered the trial testimony of the contracting officer.

Contracting Officer Lindstrom, who was called as a witness by the government, testified as to the factual basis or foundation behind his final decision. Specifically, Mr. Lindstrom testified that his final decision was based in part upon the results of a technical review performed by the Navy's Engineering Construction Division as well as the opinions of a Navy "technical analyst, his consultant, and counsel who conducted a legal review of the technical analysis" each of whom thought compensation was due.[6] Mr. Lindstrom also testified that he was convinced, after weighing the arguments of both parties equally, that 260 days of compensable delay had occurred.

Upon consideration, the Claims Court rejected Wilner's claim for added delay compensation but altered the contracting officer's delay calculations slightly to increase the quantum of delay damages already awarded, based upon 259, rather than 260 days of delay, by $26,271.49. The Claims Court also denied the government's claim for reimbursement of the delay compensation already paid to Wilner. In so ruling, the court rejected the government's contention that recovery was precluded by Wilner's inadequate critical path analysis.

**4.** As to the duct work, the Claims Court stated: "Without a critical path analysis, the court cannot exclude the possibility that the contractor caused concurrent delay on the project." Regarding the OWJ revision work, the court stated: "The absence of a critical path analysis prevents the court from discerning whether the OWJ design defect may have been discovered earlier, but for a delay of the contractor.... The evidence relating to the OWJ revision work is insufficient for this court to attribute critical path delay to the Navy." Finally, with regard to the smoke detector work, the court likewise stated: "The absence of a critical path analysis for the project prevents the court from determining that critical path delay, attributable to the Navy, occurred with respect to the smoke detector work."

**5.** The grant of an extension of time by a contracting officer may carry with it the administrative admission that the delays resulted through no fault of the contractor. *J.D. Hedin Constr. Co. v. United States*, 347 F.2d 235, 245 (Ct.Cl.1965).

**6.** At trial, the court asked Mr. Lindstrom whether he had any independent evaluation of the pro-

ject's critical path. In his response, Mr. Lindstrom explained that he had made his own evaluation, but that this case required him to rely on the expertise of his subordinates:

Now, I did not go back into this whole thing and examine everything in detail. I believe it's quite obvious from the document that I relied very heavily upon the content of the conclusions of the Analyst that I was using. One of the reasons being that there was a part of this claim that spoke to how much Mr. Wilner was worth per year, per hour, per day. And I felt that I had absolutely no expertise in that particular area at all, and therefore I tended to stay away from this part of the—of the analysis and relied upon my Consultants.

The documents referred to by Mr. Lindstrom were before the Claims Court, although apparently not entered into evidence by the government, which had called Mr. Lindstrom as a witness. There is no suggestion that these government-generated documents were otherwise in the possession of the contractor.

The government moved post-trial for leave to amend its answer and asserted another claim seeking repayment of $133,094.79 in delay-based compensation received by Wilner. However, the court held that it did not have jurisdiction to hear that claim. The government now appeals alleging that the Claims Court failed to make a proper de novo review of the contracting officer's decision.

## OPINION

### I.

■ Where both parties to a contract contribute to delay, neither can recover damages, unless there is in the proof a clear apportionment of the delay and the expense attributable to each party. *Blinderman Constr. Co. v. United States*, 695 F.2d 552, 559 (Fed.Cir.1982) (quoting *Coath & Goss, Inc. v. United States*, 101 Ct.Cl. 702, 714–15 (1944)). Thus, there can be no recovery by a contractor where the government's delay is concurrent or intertwined with other delays. *Commerce Int'l Co. v. United States*, 167 Ct.Cl. 529, 338 F.2d 81, 90 (1964); *Marshall v. United States*, 143 Ct.Cl. 51, 164 F.Supp. 221, 224 (1958). The determination of delay causation is a question of fact. *J.D. Hedin Constr. Co. v. United States*, 171 Ct.Cl. 70, 347 F.2d 235, 245 (1965).

■ In the present case, the Claims Court found that the best evidence for establishing delay causation would be a critical path analysis. However, such an analysis was not introduced at trial. Accordingly, the Claims Court relied on the testimony of the contracting officer as the next best evidence available to establish delay causation. The government suggests that the contracting officer's testimony is inadmissible hearsay be-

cause it refers to: 1) the opinions of subordinates; and 2) a technical report which was not entered into evidence. The government is incorrect.

Under Rule 801(c) of the Federal Rules of Evidence, a statement is not hearsay if it is not "offered in evidence for the truth of the matter asserted." Here, the contracting officer's testimony is not hearsay because it was not offered to establish that the opinions or the technical report were accurate. Rather, the testimony was offered to explain the basis or foundation behind the contracting officer's decision.[7] *See* M. Graham, Federal Practice and Procedure: Evidence § 6705 (interim ed. 1992); *cf. United States v. Blandina*, 895 F.2d 293, 300–01 (7th Cir.1989) (holding that statements offered to show that the listener conducted an adequate investigation are not hearsay). Also, even if the statements were hearsay, under Rule 103(a)(1) of the Federal Rules of Evidence, the government would be estopped from raising the issue on appeal since it was not timely raised at trial.

### II.

■ A contracting officer's findings of fact are "not binding in any subsequent proceeding." 41 U.S.C. § 605(a) (1988). The contracting officer merely provides an effective, nonjudicial first step in the dispute resolution process.[8] Accordingly, the Claims Court reviews contracting officer decisions de novo. *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed.Cir.1987) ("[W]here an appeal is taken to a board or court, the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference or acceptance on appeal.").

---

**7.** Contracting Officer Lindstrom was called to testify at trial by the government. During direct examination, he was asked:

Government—Q: *"What exactly did you review in formulating your final decision in descriptive terms?"*

Lindstrom—A: "All right. This review—The final review took place immediately prior to the issuance of the decision, what dates I have no recollection and I have no direct recollection of the specific time, what I was looking at

much. I can respond by looking at the document itself and draw conclusions from its content as to what I looked at. Basically I primarily relied on the content of a technical review that I had had performed for me by [the] Engineering Construction Division."
(Emphasis added.)

**8.** *See, e.g.,* H.R.Rep. No. 1556, 95th Cong., 2d Sess., at 6 (1978); 124 Cong.Rec. H10725 (daily ed. Sept. 26, 1978).

787

However, contracting officer testimony is not without value. It constitutes evidence which may be considered and weighed by a reviewing tribunal in the same way as any other piece of evidence. *J.D. Hedin Constr.*, 347 F.2d at 245; *Lathan Co. v. United States*, 20 Cl.Ct. 122, 125 (1990). *See also Elmore Moving & Storage, Inc. v. United States*, 845 F.2d 1001, 1003 (Fed.Cir.1988); *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 704 (Fed.Cir.1986); *CACI, Inc. v. United States*, 719 F.2d 1567, 1579 (Fed. Cir.1983); *Hoel–Steffen Constr. Co. v. United States*, 231 Ct.Cl. 128, 684 F.2d 843, 847 (Fed.Cir.1982); *Churchill Chem. Corp. v. United States*, 221 Ct.Cl. 284, 602 F.2d 358, 365 n. 8 (Fed.Cir.1979).

■ Here, the Claims Court could not ascertain, based upon the information presented by Wilner, whether the government was responsible for all of the alleged delay. The Claims Court determined that the evidence presented by the contractor, *taken alone,* entitled Wilner to only 91 days of compensatory delay. Accordingly, the court then considered the contracting officer's trial testimony to determine what weight, if any, it should be given as evidence of causation for the disputed periods of delay.

There is nothing in the Contract Disputes Act or the rules of evidence to prohibit the consideration of a contracting officer's testimony when ruling on liability or quantum. The court, in its role as fact finder, gave the contracting officer's testimony weight, not deference. Accordingly, the court did conduct a de novo review of the contracting officer's findings of fact when it found that Wilner was entitled to 259 days of compensable delay.

Mr. Lindstrom testified that he relied "primarily" on the "technical review" performed by the Engineering Construction Division, and that he relied on his consultants. Mr. Lindstrom also testified that he had no specific recollection at trial of the documents he reviewed in making his decision several years earlier. *See supra notes* 6, 7. However, these considerations would seem to go more toward the proper weight that Mr. Lindstrom's testimony should be given rather than to whether the court below conducted a proper de novo review as required under 41 U.S.C. § 609(a)(3). Reliance on technical reports prepared by specialists, and the expert opinions of consultants, are not unusual in government. *See* 48 C.F.R. § 1.602–2(c) (1992).

A similar case to that presented here is the aforementioned *Assurance Company v. United States.* In *Assurance,* the Federal Circuit was asked to review a decision of the Armed Services Board of Contract Appeals (board) relating to whether the board could reduce two damage awards made by the contracting officer. 813 F.2d at 1206. As in the present case, the government called the contracting officer as a witness. However, the contracting officer's testimony in *Assurance* cast doubt upon his own final decision. Based upon that testimony, the board rejected one of the contracting officer's damage awards and reduced the amount of the other. *Id.* at 1205.

On appeal, the Federal Circuit determined "from the face of the Disputes Act that a contract appeals board can, with respect to a contracting officer's decision that has been appealed to it, reduce as well as increase the award made by that contracting officer." *Id.* at 1206. The court then affirmed the board's decision. *Id.* at 1207. In doing so, the court noted that, as to the first award, the board's decision was supported by substantial evidence since the contracting officer's testimony had discredited his earlier decision, *id.* at 1206, and as for the second award, the board's decision was likewise supported by substantial evidence since the contracting officer testified that he had "overstated" that award. *Id.*

The present case differs only slightly from *Assurance.* As in *Assurance,* the trial court considered the statement of the presiding contracting officer who testified as to the reasoning behind his decision. However, in the present case, the contracting officer's testimony confirmed rather than discredited the contracting officer's award.

### III.

Finally, the United States Court of Claims, to whose precedent we are bound, *South*

Corp. v. United States, 690 F.2d 1368 (Fed. Cir.1982) (in banc), has distinguished contracting officer decisions which are adverse to the contractor from those which are favorable. See John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 1001–02 (2d ed. 1986).

A contracting officer's findings of fact and conclusions of law which are adverse to the contractor have not been entitled to a presumption of validity, see Southwest Welding & Mfg. Co. v. United States, 188 Ct.Cl. 925, 413 F.2d 1167, 1184–85 (1969); L. Rosenman Corp. v. United States, 182 Ct.Cl. 586, 390 F.2d 711, 712 n. 2 (1968), whereas decisions favorable to the contractor have been held to constitute an "evidentiary admission" of liability. Dean Constr. Co. v. United States, 188 Ct.Cl. 62, 411 F.2d 1238, 1245 (1969); Robert E. Lee & Co. v. United States, 164 Ct.Cl. 365, 370 (1964); Vulcan Rail & Constr. Co. v. United States, 158 Ct.Cl. 234, 241 (1962); George A. Fuller Co. v. United States, 108 Ct.Cl. 70, 94, 69 F.Supp. 409 (1947); J.D. Hedin Constr., 347 F.2d at 245.

The justification for this distinction is that a decision of a contracting officer which is favorable to the contractor can be viewed as a government admission against interest.[9] As the court explained almost 50 years ago in Irwin & Leighton v. United States, 101 Ct. Cl. 455, 475 (1944):

It is true that we are not bound by the findings of the contracting officer in a claim for damages due to delay, but there is a strong presumption that the delay was not less than that found. The contracting officer, or his representative, had day to day contact with the work and was in the best position of anyone, except the contractor, to know the extent of the delay. He is supposed to weigh the facts with an even hand before rendering his decision; but it cannot be overlooked that he is the defendant's selection and its own employee. He is not apt to err on the side of the contractor and against his employer, whose interests he is employed to guard and protect. Unless the clear weight of the evidence shows the delay was less than that found by him, we think defendant is bound by his finding. (Citation omitted.)

■ It is arguable that this reasoning, which originated long before the enactment of the Contract Disputes Act, does not apply to Claims Court suits. Nevertheless, we adhere to the belief that a contracting officer decision which is favorable to a contractor can logically be considered an evidentiary admission by the government—and that this position does not run afoul of the requirement under 41 U.S.C. § 609(a)(3) that contracting officer decisions be reviewed de novo.[10]

Here, the contracting officer's decision, which established 260 rather than 91 days of delay, was favorable to the contractor. Accordingly, that decision constitutes a strong evidentiary admission, subject to rebuttal, of the extent of the government's liability.[11]

## CONCLUSION

The Claims Court did conduct a proper de novo review of the contracting officer's deci-

---

9. The Court of Claims has described government admissions against interest as "pieces of evidence in favor of the contractor, to be weighed along with the other evidence" but which, when contradicted by other more direct, convincing evidence, are of "little weight". Winston Bros. v. United States, 131 Ct.Cl. 245, 259, 130 F.Supp. 374 (1955).

10. Concerns that Part III of this decision will encourage litigation by contractors would constitute mere speculation since there is no evidence that the pre-CDA cases cited in support of our position were ever the cause of increased contractor litigation. See 4 Report of the Commission on Government Procurement Law, (1973).

Furthermore, as we have stated, an evidentiary admission would exist only with regard to decisions which are favorable to a contractor. Litigation is not free, and the charges arising from costs and attorney fees can be considerable. Thus, a contractor may not be quick to incur the expense of litigation to appeal a favorable decision, especially since (1) such litigation would place the amount already awarded by the contracting officer at risk, and (2) the contracting officer's decision would not tend to establish entitlement to compensation beyond that which was already awarded.

11. The dissent states that "[t]he majority rests its affirmance upon the proposition that 'a contracting officer decision which is favorable to a contractor can logically be considered an evidentiary admission by the government.'" (Emphasis added.) This assertion puts too much emphasis on the final portion of our opinion and overlooks the second section of the decision.

sion. That decision was properly considered by the Claims Court as evidence tending to prove compensable delay, and the government failed to overcome that finding. Accordingly, the decision of the Claims Court is

*AFFIRMED.*

SCHALL, Circuit Judge, dissenting.

I respectfully dissent. I believe that the Claims Court erred as a matter of law by failing to employ the approach of a de novo proceeding, which is mandated by the Contract Disputes Act of 1978, 41 U.S.C. § 601–613 (1988 & Supp. I 1993) (CDA or Act).[1]

## BACKGROUND

In response to Wilner's claims, the contracting officer made an award to Wilner based upon 260 calendar days of delay. Subsequently, Wilner brought a direct action suit in the Claims Court under the CDA. In the Claims Court, Wilner alleged that government conduct was the legal cause of *all* of the delay to the project: from October 1, 1986 (the original contract completion date) through January 19, 1988 (the date of contract completion).

Following a careful and thorough review of the evidence adduced at trial, however, the Claims Court concluded that the only critical path delay attributable to the government extended from February 27, 1987, to May 29, 1987, a total of 91 calendar days. *Wilner v. United States*, 26 Cl.Ct. 260, 275–77 (1992). Having so concluded, the Claims Court stated:

> The problem that the court perceives is that its determinations thus far reflect the government-caused delays *as proved by plaintiff at trial,* rather than what the court perceives, *but plaintiff failed to prove,* to be the actual government-caused delays.

*Id.* at 277 (emphasis added).

Further on in its opinion, the Claims Court explained that, "[d]ue to the absence of a critical path analysis," and without considering the contracting officer's decision, it was

"unable to determine whether delays caused by the Navy were properly compensable as critical path delays." 26 Cl.Ct. at 279. The Claims Court then turned to the contracting officer's decision, in which, as noted above, the contracting officer awarded Wilner compensation based upon 260 calendar days of delay. The Claims Court described the contracting officer's decision as "evidence before the court that must be considered and weighed." *Id.* After summarizing the contracting officer's testimony explaining how he had reached his decision, the Claims Court stated:

> Plaintiff's failure to present a critical path analysis at trial is an insufficient basis to reject the contracting officer's determinations of critical path delay days based on the technical analysis [presented to the contracting officer].

*Id.* The Claims Court then went on to make an award to Wilner based upon 259 calendar days of government-caused critical path delay.

## DISCUSSION

The CDA provides that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). As far as the contracting officer's decision is concerned, the Act states that "[s]pecific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding." *Id.* The CDA further provides that, after a contracting officer renders a decision upon a claim, a contractor may bring an action directly on the claim in the Court of Federal Claims. 41 U.S.C. § 609(a)(1). In the Court of Federal Claims, the action proceeds "de novo in accordance with the rules of the court...." 41 U.S.C. § 609(a)(3).

In *Assurance Co. v. United States,* 813 F.2d 1202 (Fed.Cir.1987), this court addressed the question of the status of a contracting officer's decision under the CDA. The issue in *Assurance* was whether the

1. Unless the context requires otherwise, I refer to the trial court by the name which it had while this case was pending before it and before it was renamed the United States Court of Federal Claims.

Armed Services Board of Contract Appeals (Board) could legally reduce a contracting officer's award to a contractor when the contractor, dissatisfied with the award, brought an action before the Board. The court concluded that, under the CDA, the Board did have the power to reduce the contracting officer's award. In reaching its conclusion, the court looked to the provisions of the CDA cited above which state that findings of fact by a contracting officer are not binding in any subsequent court proceeding, 41 U.S.C. § 605(a), and that in a court action on a contracting officer's decision, the suit is to proceed de novo. 41 U.S.C. § 609(a)(3). In addressing the de novo nature of the proceedings under the CDA, the *Assurance* court stated:

> [T]he Disputes Act itself suggests that, where an appeal is taken to a board or court, the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference or acceptance on appeal.

813 F.2d at 1206.

The plain language of the CDA and this court's decision in *Assurance* make it clear that when suit is brought following a contracting officer's decision, the findings of fact in that decision are not binding upon the parties and are not entitled to any deference. Put another way, once an action is brought following a contracting officer's decision, the parties start in court with a clean slate. This means that when, as here, the claim being asserted by the contractor is based upon alleged government-caused delay, the contractor has the burden of proving the extent of the delay, that the delay was proximately caused by government action, and that the delay harmed the contractor. *See, e.g., William F. Klingensmith, Inc. v. United States*, 731 F.2d 805, 809 (Fed.Cir.1984); *Blinderman Constr. Co. v. United States*, 695 F.2d 552, 559 (Fed.Cir.1982).

The plain language of the CDA and this court's decision in *Assurance* also make it clear that, in court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. Rather, the contractor has the burden of proving the fundamental facts of liability and damages de novo. In this case, however, the Claims Court gave the contractor the benefit of just such a presumption. After reading *J.D. Hedin Constr. Co. v. United States*, 171 Ct.Cl. 70, 347 F.2d 235 (1965), as indicating that "the findings of a contracting officer are entitled to a strong presumption of validity, subject to rebuttal," *Wilner*, 26 Cl.Ct. at 277, and after stating that Wilner had failed to carry its burden of proof with respect to alleged government-caused delay, *id.*, the Claims Court stated that Wilner's failure to present a critical path analysis was "an insufficient basis to reject the contracting officer's determinations of critical path delay days based on the technical analysis." *Id.* at 279. Thus, contrary to the mandate of the CDA that a contracting officer's findings of fact are not "binding in any subsequent proceeding," 41 U.S.C. § 605(a), and contrary to the conclusion in *Assurance* that a contracting officer's award is owed neither "special deference [nor] acceptance on appeal," the Claims Court accorded the contracting officer's findings a presumption of validity, which it weighed against the evidence at trial, thereby allowing Wilner to escape the consequences of its failure to meet its burden of proof. In my view, this approach constituted error because it was contrary to the concept of proceeding de novo, which is mandated by the CDA.[2]

I respectfully disagree with the majority's view that the Claims Court conducted a de novo review because it gave "weight" to the contracting officer's testimony. Opinion at 787. I believe that a review of the pertinent portion of the Claims Court's opinion—which appears under the heading "Contracting Officer's final decision"—*Wilner*, 26 Cl.Ct. at

---

**2.** Moreover, as noted in *Assurance*, Court of Claims precedent after *Hedin* held that, in the event of an appeal to a board of contract appeals under the Disputes clause of a government contract, the contracting officer's decision was deemed "vacated" and enjoyed "no presumptive validity whatever." *Southwest Welding & Mfg. Co. v. United States*, 188 Ct.Cl. 925, 954, 413 F.2d 1167, 1184–85 (1969). "There is no reason to believe that, in enacting the Contract Disputes Act, Congress intended to change this established rule." *Assurance*, 813 F.2d at 1206.

279, reveals that, in fact, what the court did was rely upon the contracting officer's decision, not the testimony of the contracting officer at trial. The Claims Court's opinion makes it quite clear that Contracting Officer Lindstrom did not offer testimony which independently established the determination of 260 calendar days of government-caused delay. Indeed, Mr. Lindstrom had no first-hand knowledge of the events that transpired during performance of the contract, and no specific recollection of the documents he reviewed in making his decision. Rather, Mr. Lindstrom testified to the general practices within his office and the bases for his final decision. In short, Mr. Lindstrom explained what he relied upon for the conclusions in his final decision. His testimony, however, added nothing to, and provided no support for, those conclusions.[3]

The majority rests its affirmance of the Claims Court's decision upon the proposition that "a contracting officer decision which is favorable to a contractor can logically be considered an evidentiary admission by the government...." From this proposition, the majority concludes that the contracting officer's decision in this case constituted "a strong evidentiary admission, subject to rebuttal, of the extent of the government's liability." For its position, the majority relies upon the authority of *Dean Constr. Co. v. United States,* 188 Ct.Cl. 62, 74, 411 F.2d 1238, 1245 (1969); *J.D. Hedin Constr. Co., supra,* 171 Ct.Cl. at 83–84, 347 F.2d at 245; *Robert E. Lee & Co. v. United States,* 164 Ct.Cl. 365, 370 (1964); *Vulcan Rail & Constr. Co. v. United States,* 158 Ct.Cl. 234, 241 (1962); *George A. Fuller Co. v. United States,* 108 Ct.Cl. 70, 94, 69 F.Supp. 409 (1947); and *Irwin & Leighton v. United States,* 101 Ct.Cl. 455, 475 (1944).

In my view, the majority's reliance upon *Dean, Hedin, Robert E. Lee, Vulcan, Fuller,* and *Irwin & Leighton* is misplaced. The most recent of these cases predates the effective date of the CDA by almost ten years, and "[w]ith the passage of the [CDA], a new era in the resolution of government contracts

emerged." *Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. 354, 357, 656 F.2d 644, 646 (1981).

Most importantly, the view which these cases take of the legal effect of a contracting officer's decision is at odds with the plain language of the Act. That language provides that "[s]pecific findings of fact [by the contracting officer] ... shall not be binding in any subsequent proceeding," 41 U.S.C. § 605(a), and that an action in court on a claim "shall proceed de novo...." 41 U.S.C. § 609(a)(3). Contrary to section 605(a), the majority opinion makes a contracting officer's findings binding upon the government as admissions in a subsequent proceeding unless they are rebutted. Likewise, I do not think that a court proceeding on a claim can fairly be termed "de novo" within the meaning of section 609(a)(3) if the government is said to enter the proceeding fettered by the proposition that the contracting officer's decision on the claim "constitutes a strong evidentiary admission, subject to rebuttal, of the extent of the government's liability."

Finally, I believe that today's decision could have unfortunate consequences for the resolution of government contract disputes. First of all, the decision adds a complicating factor to litigation under the CDA. In certain cases, judges of the Court of Federal Claims and the boards of contract appeals will now have to engage in the preliminary activity of weighing evidence. They will have to do so in order to determine whether a "strong evidentiary admission" in favor of the contractor arising from findings of the contracting officer has been rebutted.

Second, the CDA was intended to implement the recommendations of the Commission on Government Procurement. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 185, 645 F.2d 966, 972 (1981). One of those recommendations was to "[e]mpower contracting agencies to settle and pay ... all claims or disputes arising under or growing out of or in connection with the administra-

---

**3.** As a general proposition, I do not disagree with the majority's statement that "contracting officer testimony is not without value." Opinion at 787. What I would say, though, is that in this case,

that proposition is not relevant. The reason is that, as just discussed, the Claims Court's decision is based upon the contracting officer's decision, not his testimony.

tion or performance of contracts entered into by the United States." 4 Report of the Commission on Government Procurement at 22. In addition, it has been recognized that one of the purposes of the CDA's certification requirement is to "encourage settlements." *Folk Constr. Co. v. United States*, 226 Ct.Cl. 602, 604 (1981). I believe that an unintended result of today's decision could be that, contrary to the intent of Congress, it will become more difficult to resolve contract disputes before the contracting officer, with the result that more time and money will be spent in board and court litigation by both the government and contractors.

The reason I say this is that I believe today's decision creates an incentive for contractors to litigate rather than settle and a disincentive for contracting officers to make partial awards in response to contractor claims. By permitting a contractor to use a partial award as evidence, we create an incentive for the contractor to litigate rather than settle. We do so because we increase the contractor's chances of getting the government's partial award—in effect, the government's initial offer—as its recovery floor. With its downside risk lessened, the contractor's upside gain may not need to be great before it is in the contractor's interest to litigate rather than settle. Likewise, if a contracting officer knows that a decision making a partial award to a contractor constitutes "a strong evidentiary admission, [albeit] subject to rebuttal, of the extent of the government's liability," it is not unreasonable to expect that he or she will decide not to risk tying the government's hands in subsequent litigation by issuing a decision which could give rise to such an admission. In short, I believe that a result of today's decision could well be that fewer cases will settle and that there will be fewer partial awards to contractors.

## CONCLUSION

For the foregoing reasons, I would reverse the decision of the Claims Court and would remand the case to the Court of Federal Claims for a computation of the award, if any, to which Wilner is entitled, based upon the determination of the Claims Court, fol-

lowing a review of the evidence at trial, that the government was responsible for 91 calendar days of critical path delay.

## ORDER

### Aug. 2, 1993.

The appellant, the United States, having filed a petition for rehearing, and a response thereto having been invited by the court and filed by the appellee, and the petition for rehearing having been referred to the panel that heard the appeal and denied, and thereafter the suggestion for rehearing in banc and response having been referred to the circuit judges who are in regular active service,

Upon consideration thereof, it is

ORDERED that the suggestion for rehearing in banc be, and the same hereby is, accepted.

IT IS FURTHER ORDERED that the judgment of the court entered on May 24, 1993, is vacated and that the opinions of the court accompanying the said judgment are withdrawn.

Additional briefing and argument are not indicated at this time.